**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

LACEY GENTRY,

    Plaintiff,

           v.

OFFICER TREVOR STEELE, in
his individual and Official
capacity as a police officer for
the City of Aragon, Ga.; DYLAN
COURSON, in his Individual
and Official capacity as a police
officer for the Polk County
Police Department; JOHN DOE;
Police Officers who Officer
Steele identifies in his incident
report (GA1150400) as "OTHER
OFFICERS" and who are
unknown to the Plaintiff at this
time; JOHN DOE (1-3) Other
Officers unknown to the
Plaintiff at this time,

    Defendants.

CIVIL ACTION NO.
4:23-cv-00157-WMR

## ORDER

This matter is before the Court on Defendant Trevor Steele's ("Defendant Steele") Motion for Summary Judgment [Doc. 23]. For the reasons discussed herein, Defendant Steele's Motion is **GRANTED** in part and **DENIED** in part.

## I.    Background

This action arises out of alleged misconduct against the Plaintiff by law enforcement officials employed by the City of Aragon and/or by Polk County. [Doc. 1-1 at 3].

### A. Initial Arrest

On December 22, 2021, Plaintiff was a passenger in a vehicle driven by her brother travelling south on Highway 101 in Polk County, Georgia. [*Id.* at 4]. Defendant Steele and another officer[1] initiated a procedure to pull the vehicle over for an apparent tag light violation. [*Id.*]. Plaintiff's brother eventually pulled the vehicle over to the side of the road and then immediately "fled from the vehicle[,]" leaving the Plaintiff by herself. [*Id.*]. After radioing for backup, Defendant Steele chased the driver on foot, but was unsuccessful in locating him. [Doc. 23-2 at ¶¶ 6-10]. Simultaneously, the other officer exited the patrol car and approached the passenger's side of the vehicle. [Doc. 1-1 at 4]. He motioned for the Plaintiff to roll her window down, which she did. [*Id.*]. These initial events of the night are uncontested. [Doc. 4 at ¶¶ 6-9].

The officer asked Plaintiff to identify of the driver of the vehicle, but she did not respond. [Doc. 1-1 at 4]. Plaintiff alleges that the officer then became "very aggressive" and "threaten[ed]" that if she did not reveal the identity of the driver,

---

[1]This officer has yet to be identified by either Plaintiff or Defendants.

he would take her to jail. [*Id.* at 5]. At this point, Defendant Steele had returned to the scene following his pursuit of the driver, and he approached the vehicle. [*Id.*]. Plaintiff stated she was "glad to see [him]" because they had previously dated. [*Id.*]. According to Plaintiff, Defendant Steele confirmed to the Plaintiff that if she did not reveal the identity of the driver, she would be taken to jail. [*Id.*]. Plaintiff eventually responded, but by falsely indicating that the driver was her cousin. [Doc. 23-2 at 2]. After more questioning, Plaintiff "tearfully" admitted that the driver was her brother and that he did not have a valid driver's license. [Doc. 1 at 6; Doc. 23-2 at 3].

Because Plaintiff confirmed her brother did not have a valid driver's license and because of the faulty tag light, Defendant Steele determined the car would need to be impounded. [Doc. 23-2 at 3]. Since the car was to be impounded, officers began an inventory search of the vehicle.[2] Then, Plaintiff states that Defendant Courson pulled her out of the vehicle and began to search her. [Doc. 1 at 6]. Nothing illegal was found on the Plaintiff's person. [*Id.*].

As officers began their inventory search of the vehicle, one officer observed a small plastic baggy inside a metal cup, and the officers noticed an odor of marijuana coming from the vehicle. [Doc. 23-2 at 4]. After removing the baggy and cup from the vehicle for closer inspection, one of the officers noticed the cup

---

[2] Defendant Steele indicates that Defendants Huff and Courson searched the vehicle, but Plaintiff maintains it was Defendant Steele. [Doc. 23-2 at 4; Doc. 1 at 6].

contained a "brown, crystal-like substance" in the baggy and was submerged in over an ounce of liquid. [*Id.*]. Several officers on the scene also observed this brown, crystal-like substance in the baggy. [*Id.*]. Defendant Steele then informed Plaintiff she was being arrested for possession of methamphetamine and that she would be taken to jail. [Doc. 1 at 6]. Plaintiff claims that upon hearing this news, she "almost passed out and began to cry." [*Id.*]. Defendant Courson arrested Plaintiff and placed her in the back of Defendant Steele's patrol vehicle. [*Id.*].

Defendant Steele then began to transport Plaintiff to Polk County Jail. Plaintiff states that she begged Defendant Steele not to put her in jail because she was five months pregnant and "had not done anything wrong." [*Id.* at 8]. Defendant Steele allegedly responded: "maybe your new boyfriend will get you out." [*Id.*].

### B. Subsequent Charging and Jailing

When Plaintiff arrived at the Polk County Jail, she learned that Defendant Steele had charged her with five different offenses: tampering with evidence, possession of methamphetamine, trafficking of cocaine, manufacturing methamphetamine, and possession of marijuana. [*Id.*]. Plaintiff informed officers during her booking that she was pregnant. [*Id.*].

Plaintiff was denied bond at her hearing on December 25, 2021. [*Id.* at 9]. Plaintiff states that she frequently "cried all day and night" during her time in jail,

4

was forced to sleep on the floor, and that there was mold in her cell, which affected her asthma. [*Id.*]. Eventually, Plaintiff began having premature contractions and was placed in an ambulance, and was taken to Rome, Georgia, to be treated by a doctor. [*Id.* at 10]. A Polk County officer released the Plaintiff and allowed her to return home after these events, following her approximately ten days spent in jail.[3] [*Id.*].

Several months later, prosecutors dismissed all charges against Plaintiff due to "insufficient evidence to proceed" because testing on the brown, crystal-like substance came back negative for a controlled substance. [Doc. 23-7].

## II.    Procedural History

Plaintiff initially filed her Complaint in the Polk County Superior Court, and Defendants properly removed this action to the Northern District of Georgia, Rome Division, in July of 2023. [Doc. 1]. In her Complaint, Plaintiff alleges two federal and four state law claims against all Defendants, and against Defendant Steele specifically in both his official and individual capacity. Both federal claims are brough pursuant to 42 U.S.C. § 1983 for purported violations of Plaintiff's Fourth Amendment rights under the United States Constitution, by way of illegal arrest and malicious prosecution. Plaintiff also brings Georgia state law false arrest and

---

[3] It is unclear from the Complaint exactly how many days Plaintiff spent in jail, but it is likely she was there for at least ten days.

malicious prosecution claims, as well as intentional infliction of emotional distress ("IIED") and false imprisonment claims. *See* O.C.G.A. §§ 51-7-1; 51-7-40.

In March of 2024, Defendant Steele filed a Motion for Summary Judgment seeking dismissal of all claims filed against him in his official and individual capacity. This Motion came before the Court for a hearing on September 12, 2024.

### III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper when the record evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if evidence suggests a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party may satisfy its burden by "identifying…portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any" or by simply showing

the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal punctuation omitted). However, the Court must view the facts in the light most favorable to the non-moving party. *Clark,* 929 F.2d at 608.

The burden shifts then to the non-moving party to demonstrate that there is an issue of material fact that precludes summary judgment. *Id.* A summary judgment motion may be properly opposed by any materials in the record "except the mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324. The moving party is entitled to summary judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

## IV.   Discussion

### A. Defendant Steele is entitled to summary judgment on all of Plaintiff's claims brought under federal law.

#### i. Claims against Defendant Steele in his individual capacity fail.

In his Motion, Defendant Steele argues that the federal claims against him in his individual capacity for false arrest and malicious prosecution should be dismissed as he is entitled to qualified immunity. [Doc. 23 at 13]. Officers have "the burden to establish that they were acting within their discretionary authority"

when raising a qualified immunity defense. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022). If officers can satisfy this burden, the onus is then on the plaintiff to establish that "the defendant violated a constitutional right" and "the violation was clearly established." *Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022) (internal punctuation omitted).

An officer's burden is not difficult to satisfy, but the plaintiff's burden is "not [so] easily discharged[.]" *Foy v. Holston,* 94 F.3d 1528, 1533 (11th Cir. 1996). To illustrate the breadth of qualified immunity, the United States Supreme Court has opined that it "provides ample protection to all but the plainly incompetent or the those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendant Steele was well within his scope of discretionary authority when he arrested Plaintiff and transported her to jail, so the burden shifts to Plaintiff to assert that Defendant Steele violated a clearly established constitutional right in her false arrest and malicious prosecution claims. *See Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

### 1. False Arrest

"[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 734 (11th Cir. 2010). To be entitled to qualified immunity, an arresting officer "need not have actual probable cause, but only 'arguable'

probable cause." *Id.* Arguable probable cause, a lesser standard to meet than probable cause, "exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.* (internal punctuation omitted). Further, for false arrest claims in the Eleventh Circuit, the "any-crime rule" applies, "which insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (emphasis in original). Thus, if an officer has arguable probable cause to arrest a plaintiff for at least one crime, this will defeat a false arrest claim for any and all crimes charged as a result of that arrest.

On a motion for summary judgment, this Court need only ascertain if there is a genuine dispute of material fact as to whether Defendant Steele had probable cause to arrest Plaintiff for any of the crimes she was charged with. Whether Defendant Steele possessed arguable probable cause is "naturally depend[ent] on the elements of the alleged crime…and the operative fact pattern." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007). The circumstances that created the basis for Defendant Steele's probable cause determination include: the driver of the vehicle fleeing after being pulled over; Plaintiff's initial lie about the identity of the driver; the odor of marijuana inside the vehicle; and the crystal-like substance

in the baggy in the cup filled with brown liquid. *See* [Doc. 23-3]. Defendant Steele stated in his Motion that these cited circumstances created sufficient probable cause to execute a warrantless arrest of Plaintiff related to possession of methamphetamine and "other charges." [Doc. 23 at 10-12]. It is certainly not unreasonable, when considering all of these facts together, that arguable probable cause existed to at least the possession charges.

Plaintiff's response, in which she argues Defendant Steele acted with malice, is irrelevant, unpersuasive, and lacks any evidentiary support. *See* [Doc. 31 at 12-13]. Even if the alleged malice was supported by a factual record, "subjective intent is irrelevant in a qualified immunity analysis" for false arrest claims. *Brown,* 608 at 737.  Plaintiff was unable to demonstrate a genuine dispute of material fact in light of the argument and evidence presented by Defendant Steele. Therefore, Defendant Steele's Motion is GRANTED as to Plaintiff's false arrest claim against him in his individual capacity, and that claim is DISMISSED.

## 2.  Malicious Prosecution

To succeed on a malicious prosecution claim, a plaintiff must present evidence of a violation of the Fourth Amendment right to be "free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution." *Williams,* 965 F.3d at 1157. (internal punctuation omitted). The Eleventh Circuit does not extend the any-crime rule to malicious prosecution claims, so an officer is

not protected from such a claim unless there was sufficient probable cause for each

individual charge. *Id.* at 1157. A plaintiff must demonstrate both malice and lack

of probable cause to pursue a malicious prosecution claim. *Brown,* 608 at 734;

*Williams,* 965 F.3d at 1157.

Defendant Steele attempts to argue in his Motion that because there was

probable cause to support the arrest of Plaintiff, he is entitled to qualified immunity

against the malicious prosecution claim. *See* [Doc. 23 at 12].  It is clear on the face

of the record that at least some of what Plaintiff was charged with is not supported

by probable cause, arguable or otherwise. Particularly, the trafficking of cocaine

charge: as Plaintiff points out, the incident report from the night of the arrest does

not "mention any amount of [c]ocaine…found in the vehicle…or…on the

Plaintiff." [Doc. 31 at 6]. It is difficult for this Court to cognize how a reasonable

officer would have probable cause to charge Plaintiff for trafficking of cocaine

when at the scene there was merely an odor of marijuana and an (at the time)

unidentified brown crystal-like substance in a cup of liquid. This Court has similar

concerns regarding the manufacture of methamphetamine charge.

However convincing this lack of probable cause may be, Plaintiff must still

pair this evidence of a lack of probable cause with affirmative evidence of malice

in the record to survive summary judgment and continue with her claim; she has

failed to do so. Though Plaintiff alleges malice in her Response, she only cites her

11

own unsworn Complaint and no record evidence, thus she relies only upon the "mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324.[4] *See* [Doc. 31 at 12-13]. Therefore, Defendant Steele's Motion is GRANTED as to Plaintiff's federal malicious prosecution claim against him in his individual capacity, and the claim is DISMISSED.

### ii. Claims against Defendant Steele in his official capacity fail.

Plaintiff also brings her federal claims under § 1983 against Defendant Steele in his official capacity. Indeed, "official-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)). Thus, "suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* Defendant Steele, at the time of the incidents at issue in this suit, was employed by the City of Aragon ("City of Aragon").

Cities do not enjoy absolute immunity when sued under § 1983. *Monell*, 436 U.S. at 701 (1978). Liability may be imposed on a government that "under color of some official policy 'causes' an employee to violate another's constitutional right." *Id.* at 692. In addition to "identify[ing] a municipal policy or custom that caused

---

[4] If Plaintiff had included these allegations through a sworn affidavit, declaration, or evidence that could be otherwise considered testimonial, it would have been compelling evidence of malice. However, this Court cannot rely on bare allegations as the basis for a claim to survive summary judgment.

the … injury[,]" a plaintiff must also demonstrate that  the policy or custom was the "moving force" behind the alleged constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Defendant Steele states in his Motion that there is not "even a single allegation [by Plaintiff] that any policy or custom of the City of Aragon caused her injuries." [Doc. 23 at 13]. Plaintiff's Response is devoid of even a mere mention of official immunity, let alone evidence of any official policy related to her claims brought pursuant to § 1983. *See* [Doc. 31]. In the absence of any evidence on the record of a policy or custom that caused the alleged constitutional violation, or any evidence that such policy or custom was the moving force of her injury, Defendant Steele is entitled to summary judgment. Therefore, Defendant Steele's Motion is GRANTED as to Plaintiff's federal false arrest and malicious prosecution claims brought against him in his official capacity, and the claims are DISMISSED.

**B. Defendant Steele is entitled to summary judgment on Plaintiff's state law false imprisonment and false arrest claims, but her malicious prosecution and IIED claims survive.**

**i.  Claims against Defendant Steele in his individual capacity.**

Defendant Steele argues that he is entitled to official immunity on all of Plaintiff's state law claims against him in his individual capacity. [Doc. 23 at 14].

In Georgia, "a public officer or employee may be personally liable for his negligent ministerial acts, [but] he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority." *Gilbert v. Richardson*, 264 Ga. 744, 752, 452 S.E.2d 476 (1994). A defendant is liable for discretionary acts that involve either actual malice, which involves a "deliberate intention to do wrong[,]" or actual intent to cause injury, which involves "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Adams v. Hazelwood*, 271 Ga. 414, 414, 520 S.E.2d 896, 898 (1999); *West v. Davis*, 767 F.3d 1063, 1072 (11th Cir. 2014). This threshold inquiry is a "question of law for the court to decide." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 527, 824 S.E.2d 297, 301 (2019).

As in the Court's analysis for qualified immunity in the previous section of this Order, Defendant Steele's actions – arresting, detaining, transporting, and charging Plaintiff – are discretionary, so the only issue for this Court to resolve is whether there is evidence that his actions were willful, wanton, or outside the scope of his discretionary authority. *Id.* Because each claim brought by Plaintiff has an element of malice or intent that would place Defendant Steele's actions outside of the realm of his discretionary duty, where Plaintiff has provided enough of a factual record to continue pursuit of her claim, Defendant Steele is not entitled to official immunity.

### 1.  False Arrest and False Imprisonment

To be entitled to a right of action for false arrest, Georgia law requires the arrest be made "under process of law, without probable cause, when made maliciously." O.C.G.A. § 51-7-1. Georgia courts have held that "under process of law," for the purposes of false arrest claims, requires the arrest be made pursuant to a warrant. *Ferrell v. Mikula*, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008). The "key distinction" between false arrest and false imprisonment is "whether the person was detained using a warrant or not." *Id.* Because Plaintiff's arrest was not made pursuant to a warrant, her false arrest claim must be dismissed against Defendant Steele in his individual capacity. Therefore, Defendant Steele's Motion is GRANTED as to Plaintiff's state law false arrest claim.

Plaintiff's false imprisonment claim may survive, but only if her detention was "unlawful." O.C.G.A. § 51-7-20. To defend against such a claim, an officer must show both the existence of probable cause and exigent circumstances that predicated the warrantless arrest and subsequent detention. *Collins v. Sadlo*, 167 Ga. App. 317, 319, 306 S.E.2d 390, 392 (1983). The Georgia Code enumerates the only acceptable exigent bases for a warrantless arrest. *See* O.C.G.A. § 17-4-20(a)(1)(B). The statute includes a catch-all provision, permitting a warrantless arrest if there is "likely to be failure of justice for want of a judicial officer to issue a warrant." *Id.* The Georgia Supreme Court has interpreted this provision to mirror

federal probable cause determinations, thus an "arrest… legal under federal law, [is] legal under state law." *Durden v. State*, 250 Ga. 325, 327, 297 S.E.2d 237, 240 (1982).

As previously articulated in the federal false arrest discussion of this Order, Defendant Steele had probable cause to arrest Plaintiff for at least some of the charged crimes, like possession of marijuana and possession of methamphetamine. Because Defendant Steele has indicated that the record reflects the warrantless arrest was based upon adequate probable cause, Plaintiff's state law false imprisonment claim must fail. Therefore, Defendant Steele's Motion is GRANTED as to Plaintiff's state law false imprisonment claim.

### 2. Malicious Prosecution

To pursue a Georgia malicious prosecution claim under O.C.G.A. § 51-7-40, a plaintiff must show: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." *Trident Wholesale, Inc. v. Brown*, 370 Ga. App. 505, 509, 897 S.E.2d, 610, 615 (2024). A lack of probable cause is demonstrated when "the circumstances are such 'as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.'" *Id.* at 509-10 (quoting O.C.G.A. § 51-7-3). Further, the third element need not be affirmatively asserted,

because "[m]alice sufficient to sustain a recovery may be inferred from want of probable cause." *Hicks v. Brantley*, 102 Ga. 264, 268 (1897). Unlike its federal counterpart, Georgia state law malicious prosecution claims do not require additional evidence of malice to continue with this claim and a plaintiff may simply assert a lack of probable cause.

In malicious prosecution actions, "want of probable cause is a question for the jury, under direction of the court" and is a "mixed question of law and fact." *Melton v. LaCalamito*, 158 Ga. App. 820, 823, 282 S.E.2d 393, 397 (1981) (internal punctuation omitted). "Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court." *Id.* Probable cause exists when the facts and circumstances would "excite the belief in a reasonable mind" of guilt, and though "absolutely certainty" is unnecessary, it must be more than "mere conjecture or unfounded suspicion[,]" that would not require a reasonable man to investigate further. *Id.* at 824.

Defendant Steele may have had probable cause for Plaintiff's initial arrest related to possession of methamphetamine and marijuana, but the underlying probable cause to support those charges does not quelle concerns as to why she was later charged with trafficking of cocaine and manufacturing methamphetamine. It is absurd to assert that the "circumstances and collective

knowledge of officers on the scene[,]" would provide probable cause for such charges, especially when the only tangible evidence present was a small baggy filled with a "brown-ish, "crystal-like" substance in a cup with just over an ounce of liquid. [Doc. 23-3 at 4]. Charging Plaintiff with these inflated offenses seems to meet exactly the "mere conjecture" and "unfounded suspicion" Georgia courts caution against. *Melton,* 158 Ga. App. at 820. Plaintiff need only point to existing evidence in the record to survive summary judgment and is not required to provide additional evidence to support her claim. *Celotex Corp.*, 477 U.S. at 324.

In addition to properly asserting that the record indicates that many of the charges against Plaintiff sorely lack adequate probable cause, Plaintiff has effectively demonstrated sufficient evidence to support her claim. Plaintiff has shown: (1) she was "prosecuted" for the offenses, meaning that criminal proceedings were instituted against her, which occurred at her booking; (2) Plaintiff indicated that the record shows the offenses were instigated without probable cause; (3) the lack of probable cause entitles her to an inference of malice; (4) her warrantless arrest was constitutionally valid; (5) the case against her was favorably terminated when it was dismissed by prosecutors; and (6) she suffered harm as a result, namely her premature contractions. Because Plaintiff sufficiently alleged a factual basis for her claim of malicious prosecution, the claim survives summary judgment, as a genuine issue of material fact remains.

Defendant's Motion is DENIED as to Plaintiff's state law malicious prosecution claim.

### 3. IIED

To sustain a Georgia IIED claim, a plaintiff must demonstrate four elements: (1) the conduct [of the defendant(s)] was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. *Cottrell v. Smith*, 299 Ga. 517, 521, 788 S.E.2d 772, 780 (2016). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1991). Further, a plaintiff must also demonstrate that the emotional distress manifested physically or mentally and required the victim "to seek medical or psychological treatment" for the claim to survive. *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 208, 776 S.E.2d 288, 302 (2015).

At the summary judgment stage, this Court need only address the threshold questions of whether Defendant Steele's conduct meets this requisite level of outrageousness and egregiousness and whether the suffered emotional distress was sufficiently severe. The latter element has been met unequivocally, as Plaintiff had

to be taken to see a doctor as a result of the stress and alleged poor conditions in the jail. *See* [Doc. 1 at 10].

Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," will be considered extreme and outrageous for IIED purposes. *Justice v. SCI Ga. Funeral Servs.*, 329 Ga. App. 635, 639, 765 S.E.2d 778, 782 (2014). To determine if the conduct meets this standard, courts will consider a broad range of factors, which include any history between plaintiff and defendant, the existence of power or control between the parties, and evidence of a defendant's malicious purpose or wanton disregard of a plaintiff's rights. *Gordon v. Frost*, 193 Ga. App. 517, 521-22 (1989). In fact, "the existence of a special relationship in which one person has control over another . . . may produce a character of outrageousness that otherwise might not exist." *Id.* Additionally, when considering whether a defendant-officer acted with malicious intent, it may be inferred if there was no underlying probable cause for the arrest. O.C.G.A. § 51-7-44; *Hicks v. Brantley*, 102 Ga. 264, 268 (1897).

While Georgia appellate courts have not engaged directly with whether an arresting law enforcement officer's conduct was extreme and outrageous in pursuing charges that were not supported by probable cause, they have consistently held that a private citizen's pursuit of criminal charges against another without

probable cause is sufficient for an IIED claim. *See Reid v. Waste Industries USA, Inc.*, 345 Ga. App. 236, 812 S.E.2d 582 (2018) (reversing grant of summary judgment where the defendants falsely accused plaintiff of pointing a gun at them to induce his arrest); *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 525 S.E.2d 751 (1999) (holding that conduct may be outrageous where a defendant falsely accused plaintiff with a signed affidavit, knowing plaintiff would be jailed as a result of the accusation); *Adams v. Carlisle*, 278 Ga. App. 777, 630 S.E.2d 529  (2006) (reversing grant of summary judgment because defendant lied to police officer about plaintiff's conduct to cause his arrest). Georgia courts have further held that in such cases, the failure to attempt to remedy the resulting incarceration predicated upon a false report is considered extreme and outrageous. *See Reid*, 345 Ga. App. at 243-44 (reversing grant of summary judgment where defendants falsely accused plaintiff of pointing a gun at them and allowed related incarceration to continue without intervention); *K-Mart Corp. v. Lovett*, 241 Ga. App at 28-29 (holding that conduct may be outrageous where defendant intentionally falsified his affidavit knowing plaintiff would be jailed as a result of the accusation, without any attempt to remedy plaintiff's subsequent incarceration).

In the instant case, both the prior relationship between Defendant Steele and Plaintiff and the lack of probable cause to support many of her charges could create a valid IIED claim in Georgia. Plaintiff alleges in her Complaint that she and

Defendant Steele had previously dated, which demonstrates the potential for an unequal power dynamic given the alleged history between the two. [Doc. 1-1 at 5]. Plaintiff also claims that Defendant Steele met her cries with comments that perhaps her "new boyfriend" would be able to help, which could further cement these concerns. [*Id.*]. Then, when Plaintiff arrives at her booking, she is informed that she was charged with seemingly disproportionate charges for what was discovered at the scene. [*Id.* at 8].

Defendant Steele, in his signed affidavit, does not address these allegations of his prior relationship with Plaintiff or any alleged impropriety as a result. *See* [Doc. 23-3]. Defendant Steele does not otherwise mention this issue in his Motion, nor does he anywhere else in the record. The history between the Plaintiff and Defendant Steele and obvious power imbalance on the night of the arrest could, by its unique nature, create a "character of outrageousness" sufficient for an IIED claim. *Gordon*, 193 Ga. App. at 522.

Turning to whether a lack of probable cause would be sufficiently outrageous to sustain an IIED claim, Defendant Steele does address this issue. *See* [Doc. 23]. But, his blanket assertions that he had probable cause to charge Plaintiff with all the crimes she was accused of are insufficient without additional evidence. As consistently articulated in this Order, there was clearly a lack of probable cause for at least some of the charges brought against Plaintiff. And, though Defendant

Steele would certainly have had probable cause to charge Plaintiff with offenses like obstruction or making false statements to law enforcement, it is difficult to ignore that he opted instead to charge her with more substantive felonies, unsupported by probable cause, that he would obviously be aware could result in harsher penalties.

These circumstances bear a striking resemblance to existing Georgia case law, in which courts have found a basis for IIED claims where criminal penalties were pursued without a legitimate factual basis. *See Reid*, 345 Ga. App. at 243-44; *K-Mart Corp. v. Lovett*, 241 Ga. App at 28-29. Further, Defendant Steele's failure to in any way remedy Plaintiff's extended stay in jail or her denial of release on bond only strengthens the connection. *See id.*

Because this Court is skeptical that were was probable cause for some of Plaintiff's more severe charges, in tandem with Plaintiff's allegations of a former relationship with Defendant Steele and his alleged comment about her new boyfriend[5], the record supports a finding that his alleged conduct is sufficiently extreme to support her IIED claim. Plaintiff has provided record evidence that supports the other elements of her claim: (1) Defendant Steele's behavior was intentional; (2) his conduct was extreme and outrageous; (3) there is a causal

---

[5] Though the Court's retention of the IIED claim is premised upon the overcharging of the Plaintiff and not her previous relationship with the Defendant, if Plaintiff is able to prove this at trial, it would serve to further strengthen her case.

connection, here between the arrest and her subsequent harm; and (4) the emotional distress was severe, as it resulted in her seeking medical care due to her premature contractions.

Because Plaintiff has sufficiently alleged a factual basis for her claim of IIED, the claim survives summary judgment. Defendant's Motion is DENIED as to Plaintiff's IIED claim.

### ii. Claims against Defendant Steele in his official capacity.

The state law claims against Defendant Steele in his official capacity are, like their federal counterparts, actually suits against the City of Aragon.

As an initial matter, Defendant Steele's argument that Plaintiff's failure to timely comply with the ante litem notice requirements proves fatal to her case is unpersuasive. Georgia law requires that a plaintiff must serve upon a municipal defendant an ante litem notice, containing information about the event that gave rise to the claim. OCGA § 36-33-5(a). The notice must be served "within six months of the happening of the event" and has to include certain facts about the event, including the "negligence which caused the injury." OCGA § 36-33-5(b). However, this requirement "only applies to damages caused by negligence, not intentional acts[,]" so Plaintiff's failure to timely comply with it is not fatal to her claims as they all require some element of malice or intent. *West v. City of Albany*, 300 Ga. 743, 747, 797 S.E.2d 809, 812 (2017). Regardless of whether the notice

was sent after the six-month period as Defendant Steele contends, because of the nature of Plaintiff's claims, this alone does not serve as grounds to dismiss them against the City of Aragon.

However, Plaintiff's claims against Defendant Steele in his official capacity must be dismissed on other grounds: the City of Aragon is entitled to immunity against her claim. The Georgia Constitution indicates state departments and agencies enjoy sovereign immunity, but this immunity "can …be waived by an Act of the General Assembly." Ga. Const. Art. I, § II, Para. IX(a). The Georgia Supreme Court has declined to extend sovereign immunity to municipal departments and agencies through the Georgia Constitution, but the Georgia General Assembly may create statutes that provide for municipal immunity. *See City of Thomaston v. Bridges*, 264 Ga. 4, 7, 439 S.E.2d 906, 909 (1994).

O.C.G.A. § 36-33-1 imposes liability on municipal agencies and departments for injuries resulting from negligent ministerial acts of its employees, but exempts discretionary acts, whether the resulting injury is from the "failure to exercise" or "improper or negligent exercise" of such powers. *Mayor and Council of Dalton v. Wilson*, 118 Ga. 100, 102, 44 S.E. 830, 832 (1903). The Georgia Supreme Court has interpreted this provision in tandem with O.C.G.A. § 36-33-3, which explicitly provides that a municipal corporation "shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed

on them by law." *See City of Atlanta v. Mitcham,* 296 Ga. 576, 580, 769 S.E.2d 320, 324 (2015). This immunity extends to all torts, including actions against officers who acted "negligently or recklessly or …with actual malice." *Weaver v. City of Statesboro*, 288 Ga. App. 32, 35, 653 S.E.2d 765, 768 (2007). *See Williams v. Solomon,* 242 Ga. App. 807, 810, 531 S.E.2d 734, 737 (2000) ("…City would not be liable even if [Defendant] had committed an intentional tort.").

However, this statutory immunity may be waived. A governmental employer is liable under the doctrine of respondeat superior for "inevitable mishaps that will occur when employees perform their discretionary duties… to the extent the city has waived its governmental immunity through the purchase of liability insurance." *Cameron v. Lang*, 274 Ga. 122, 126–27, 549 S.E.2d 341, 347 (2001) (internal punctuation omitted). There is no evidence in the record as to whether the City of Aragon had such liability insurance. In the absence of such evidence, "there has been no waiver of the city's governmental immunity." *Id.* Therefore, all claims against Defendant Steele in his official capacity are dismissed, and his Motion is GRANTED to that extent.[6]

---

[6] This Court would also like to note that the City of Aragon may not have been properly served to begin with. If that was the case here, it would have prevented the City of Aragon from adequately defending itself against the claims, in direct violation of Due Process, which would have created additional grounds for dismissal. However, none of the parties raised this issue, and this Court declines to dismiss on those grounds *sua sponte*.

### C. Punitive Damages

Plaintiff seeks punitive damages against Defendant Steele. *See* [Doc. 1-1]. For all her claims dismissed within this order, recovery of any damages, punitive or otherwise, are rendered moot. But as to her surviving malicious prosecution and IIED claims, Georgia law governs whether punitive damages are applicable. Punitive damages are recoverable in Georgia if a plaintiff can prove by clear and convincing evidence that the defendant's actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).   The showing Plaintiff must make to prove her malicious prosecution and IIED claims mirrors what she would need to demonstrate to be entitled to punitive damages. Because these state law claims against Defendant Steele survive, so too does her claim for recovery of punitive damages. Defendant Steele's Motion is DENIED as to her surviving claims.

### V.    Conclusion

Plaintiff's state law claims of malicious prosecution and IIED against Defendant Steele in his individual capacity survive and she may seek punitive damages on those claims. All other claims are DISMISSED. For the reasons discussed herein, Defendant Steele's Motion for Summary Judgment [Doc. 23] is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**, this 27th day of December, 2024.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE